Richard J. SEDOR

v.

Anthony M. FRANK,
Postmaster General.

Civ. No. H–89–860 (PCD).

United States District Court,
D. Connecticut.

Feb. 26, 1991.

Ann F. Bird, Pepe & Hazard, Hartford, Conn., for plaintiff.

Nancy B. Lavine, Office of Field Legal Services, U.S. Postal Service, Windsor, Conn., Ruth A. McQuade, Asst. U.S. Atty., New Haven, Conn., for defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff, Richard J. Sedor, who is mentally handicapped, alleges that defendant discriminated against him by discharging him from employment in violation of the Rehabilitation Act of 1973 ("Act"), 29 U.S.C. § 794. Defendant, the Postmaster General, moves for summary judgment.

*Facts*

Plaintiff was hired as a mailhandler by the United States Postal Service in January of 1982, pursuant to a hiring program for the severely handicapped. He was discharged in April of 1988, allegedly due to excessive absence. Plaintiff was raised at the Mansfield Training School in Storrs, Connecticut, the victim of an erroneous diagnosis of mental retardation. He has been re-diagnosed as suffering from significant learning disabilities accompanied by emotional instabilities. Affidavit of Susan Werboff, Exhibit S. Plaintiff must have things repeatedly and clearly explained to him in order that he understand. Transcript of EOC Admin. Hearing (7/6/89) ("Tr.") at 11.

Throughout plaintiff's employment, numerous disciplinary actions were instituted against him for absenteeism, insubor-dination, disruptive behavior, and reporting to work under the influence of drugs or alcohol. The punishment for these infractions were letters of warning and suspensions, one of which lasted eighteen months.

During plaintiff's employment, the post office allegedly took various steps to accommodate his handicap. These accommodations included the giving of repeated and clear verbal instructions, Affidavit of James P. Greene at 2; clearly marking mail containers with labels, Affidavit of Kenneth Pennington at 3; and moving plaintiff to new work areas when he expressed boredom with his present work area or dislike of his co-workers, Affidavit of Kenneth Pennington at 3, 4, Exhibit I. In addition, the Connecticut Department of Vocational Rehabilitation ("DVR") provided plaintiff with a "job coach" to counsel plaintiff as to the proper performance of his work. Plaintiff subsequently discharged the "job coach" because he felt he was not helping him and was making needless inquiries into his personal life. Tr. at 14.

On February 2, 1988, plaintiff ceased going to work. Within one or two days, plaintiff called his supervisor to inform him that he would not come to work as he needed personal time to resolve emotional problems, which allegedly arose out of a car accident in December of 1987 and the post office's refusal to provide him with counseling. Tr. at 17. Plaintiff claims that the supervisor told him to take his time and just call every two or three weeks to let him know what his status was.

Defendant's version of this conversation is markedly different. Defendant claims that plaintiff simply informed the supervisor that he might not be in for a week and the supervisor responded by disapproving this request because plaintiff provided no documentation justifying the absence. Deposition of Kenneth Pennington, Exhibit J. Approximately three weeks after this conversation, defendant sent, and plaintiff received, a "return to work" letter which stated that plaintiff must provide documentation in support of his absence within five days of the letter's receipt. Allegedly, plaintiff did not understand this letter and

called his supervisor in search of clarification. Plaintiff claims the supervisor told him to just sign the letter, let him know when he could come back to work, and bring some documentation when he did return. Tr. at 19. The supervisor claims that, upon receiving the "return to work" letter, plaintiff informed him that he would be back to work on February 29th. Pennington Affidavit at 2, Exhibit J.

No further conversations between plaintiff and Pennington took place and, approximately three weeks later, plaintiff received a letter from the post office stating that he and his representative would be given the opportunity to meet with management so that the procedure for his removal could be explained to him. At this meeting, plaintiff submitted medical documentation showing that he had sought and received counseling during his absence. Plaintiff requested, as reasonable accommodations, another job coach and counseling services. Declaration of Doris Giles, Exhibit Z. Defendant declined to provide such accommodations and plaintiff was discharged.

On July 21, 1988, plaintiff filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On September 11, 1989, Administrative Judge Ronald E. Krieger rendered a decision in which he recommended that the Postal Service adopt a finding of discrimination based upon handicap. Recommended Decision, Judge Krieger, attached to the complaint. The Postal Service refused to adopt such a finding, Letter of Mary S. Elcano, Regional Director of Human Resources, United States Post Office, and plaintiff instituted the present action on December 18, 1989.

*Discussion*

Summary judgment motions will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The movant has the burden of showing the non-existence of any material fact. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The evidence must be viewed in the light most favorable to the non-moving

party and all reasonable inferences favorable to the non-moving party must be drawn. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The Rehabilitation Act of 1973 states in pertinent part:

No otherwise qualified individual with handicaps in the United States, as defined in section 7(8) [29 U.S.C. § 706(8) ], shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Defendant claims it is entitled to judgment, as a matter of law, as to plaintiff's claim of discrimination based on handicap because plaintiff is not an "otherwise qualified" employee within the meaning of the Rehabilitation Act.

 In a discrimination case under § 794, the burden of proof is initially upon the plaintiff to establish a prima facie case of unlawful discrimination by proving that: (1) he is a handicapped person within the meaning of the act; (2) he is otherwise qualified for the position; (3) he was excluded or discharged from the position solely by reason of his handicap; and (4) the position was part of a program or activity of the postal service. *See Joyner by Lowry v. Dumpson*, 712 F.2d 770, 774 (2d Cir.1983); *Doe v. New York Univ.*, 666 F.2d 761, 774 (2d Cir.1981); *see also Matzo v. Postmaster General*, 685 F.Supp. 260, 262–63 (D.D.C.1987), *aff'd*, 861 F.2d 1290 (D.C.Cir.1988). Once plaintiff has established a prima facie case of discrimination the burden of proof shifts to the employer to rebut the inference that the handicap was improperly taken into account. *Dexler v. Tisch*, 660 F.Supp. 1418, 1425 (D.Conn. 1987).

As defendant does not contend that plaintiff is not handicapped within the meaning of the Act, the threshold inquiry is whether plaintiff has proven himself to

be "otherwise qualified" within the meaning of the Act to fill the position of mailhandler. A qualified handicapped person is defined in 29 C.F.R. 1613.702(f) as "a handicapped person who, with or without reasonable accommodation can perform the essential functions of the position without endangering the health and safety of the individual or others." *Id.*

■ The determination of whether a person is "otherwise qualified" requires inquiry, not only into plaintiff's ability to perform the job's essential functions, but also whether reasonable accommodation by the employer would enable plaintiff to perform those functions. *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1078 (6th Cir.1988). Thus, an employer may be required under the Act to make reasonable accommodations to assist handicapped employees in the performance of the essential functions of their job. The key word here is "reasonable." Employers are not required to incur extensive costs nor undue administrative burdens. 45 C.F.R. 85.42 (Oct. 1, 1989).

As defendant asserts that its sole reason for dismissing plaintiff was his absence from February 3 through April 14, 1988, it is assumed that, prior to that absence, plaintiff was performing the essential functions of his job satisfactorily. Thus, focus should be on the circumstances surrounding that absence.

■ Defendant argues that, by virtue of his excessive absence, plaintiff cannot be considered "otherwise qualified" because "a non-working employee is not qualified." Defendant's Memorandum at 13, citing *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn.1986), *aff'd,* 831 F.2d 298 (6th Cir.1987). Attendance is an essential function of a mailhandler and an employee who is habitually absent is a non-performer and thus unqualified. The question here is whether plaintiff's absence, initially undocumented, renders him unqualified so as to remove him from the cloak of the Act. That Act tips the balance somewhat in favor of a handicapped person, who, in all probability, cannot meet the standards of employment reasonably expected of employees in general. Though reduced, the standard of performance which a handicapped person must meet is one which accommodates the handicap but, nonetheless, provides an employer with a reasonable degree of job performance.

■ Summary judgment is inappropriate in this case as a question of fact exists as to whether plaintiff's absence was a reasonable accommodation of his handicap or was knowingly unexcused such that he risked losing his job because of his failure to provide information from which his supervisor could accept the absence as such an accommodation. Based on plaintiff's alleged conversations with Pennington, plaintiff may have believed that he was excused from work until his personal problems were resolved. The factual dispute as to the content of those conversations render this matter particularly inappropriate for resolution by summary judgment.

Further a question of fact exists as to whether defendant reasonably accommodated plaintiff by making it clear to him that he was not excused from work and that he had to provide medical documentation justifying his absence. Plaintiff claims that, when he called his supervisor for clarification of the warning letter, he was told to sign it, let his supervisor know when he could return to work, and bring documentation with him when he returned. His supervisor claims plaintiff told him he would return to work within a few days. No further conversations took place until plaintiff received a notice of removal. Thus, a dispute exists as to whether plaintiff was adequately apprised of the seriousness of his absence. Unquestionably, the extent of an employer's obligation to accommodate the limitations of one cloaked with the protection of the Act presents a troublesome question for want of a bright line standard by which to measure both the employee's performance and the employer's expectations in the particular circumstances.

Aside from the management meeting that plaintiff was afforded as a handicapped employee, it appears that defendant utilized the same removal process as would

be used for any nonhandicapped employee. In light of plaintiff's learning disability, it cannot be found, unequivocally, that this procedure sufficiently apprised plaintiff of his obligation to substantiate his claim of justified absence. If he had been informed such that, considering his limitations, he clearly should be held to have understood that he was not being excused and that he had to provide medical documentation, his course of conduct may have been different. Just as plaintiff needed to have the substantive aspects of his job clearly and repeatedly explained, he could, as well, have needed the procedural aspects (i.e., documentation requirements of extended absences) explained in a like manner. Whether this was done to the extent reasonably required is a question of fact which cannot be resolved on motion. Thus, a genuine issue of fact exists as to whether plaintiff was otherwise qualified and, if so, whether he was discharged by reason of his handicap.

*Conclusion*

Accordingly, defendant's motion for summary judgment is denied.

SO ORDERED.