**Howard FINK and Lucia Marett, Plaintiffs–Appellants,**

v.

**NEW YORK CITY DEPARTMENT OF PERSONNEL, New York City Human Resources Administration and Department of Social Services, Defendants–Appellees.**

No. 1055, Docket 94–7699.

United States Court of Appeals, Second Circuit.

Argued March 3, 1995.

Decided May 19, 1995.

**566**

Jeffrey L. Kreisberg, New York City (Kreisberg & Maitland and Barry M. Benjamin, of counsel), for plaintiffs-appellants.

Margaret G. King, Asst. Corp. Counsel of City of New York, New York City (Paul A. Crotty, Corp. Counsel, and Barry P. Schwartz, of counsel), for defendants-appellees.

Karen M. Moran, Washington, DC (James R. Neely, Jr., Gwendolyn Young Reams, Vincent J. Blackwood, Samuel A. Marcosson, E.E.O.C., Washington, DC, and Deval L. Patrick, David K. Flynn, Gregory B. Friel, Dept. of Justice, Washington, DC, on the brief), amicus curiae.

Before: WINTER and LEVAL, Circuit Judges, and SAND, District Judge.*

LEVAL, Circuit Judge:

Appellants Howard Fink and Lucia Marett, who are visually impaired employees of the New York City Human Resources Administration ("HRA"), brought this action alleging that the New York City Department of Personnel and the New York City Human Resources Administration, Department of Social Services, violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), by failing to make accommodation for their disabilities during the administration of a civil service promotional examination, with the result that plaintiffs failed the exam.

The United States District Court for the Southern District of New York, Loretta A. Preska, *Judge*, granted summary judgment for the defendants, and this appeal followed. Affirmed.

### BACKGROUND

In November 1989, plaintiffs took the civil service examination for promotion to the position of Supervisor II in the HRA. The test was administered by the Department of Personnel, Examining Services Division ("DOP"). Twelve visually impaired candidates, including plaintiffs, took the examination. Each was given a tape recording of the exam and a tape recorder, as well as a reader-assistant (called an "amanuensis") to record answers and to help the test-taker use the tape recorder. Each was allowed double the usual time to take the test and took the examination in a private room, with only the reader present.

Fink and Marett each failed by two incorrect answers. They brought this suit more than two and one-half years later alleging that their failure was attributable to various deficiencies in the defendants' accommodation of their disability. Among the deficiencies alleged were that their reader-assistants talked among themselves in a manner that distracted the plaintiffs and refused on some occasions to read back an answer. Plaintiffs allege that this faulty performance of the readers' duties violated the plaintiffs' rights under § 504.

There was substantial reason to doubt the accuracy of these allegations concerning the performance of the readers. Although plaintiffs claim to have promptly complained to DOP about the readers' conduct by telephone, the DOP has no record of having ever received any such complaints. And although shortly after the exam the plaintiffs filed written complaints concerning the wording of

---

* The Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

certain questions, they made no written complaint regarding the conduct of the readers for nearly two and a half years following the examination. On November 21, 1989, Fink wrote to point out a specific problem with a question, and noted that he "found these tapes to be satisfactory." On November 26, 1989, Marett wrote to complain about the wording of one question. Her letter opened:

> I wish to thank you for all you have done to arrange for the necessary special accommodations to make it possible for visually handicapped city employees to take the [examination].... One accommodation, without which we would not have passed this test, was the reading of this exam on cassette tape. Thank you for your help in providing us with amanuenses to record our answers on the answer sheets.

Notwithstanding the likely impeachment of these complaints, the district court properly accepted them as true for purposes of the motion for summary judgment, and we do as well. On this appeal, the plaintiffs have dropped all claims except those regarding the performance of the readers.

## DISCUSSION

■ Section 504 prohibits the exclusion of an otherwise qualified individual with disabilities from participation in any federally funded program by reason of these disabilities, and discrimination against any such individual by any Executive Agency receiving federal funding.[1] As the Act has been interpreted, it requires the employer to make a reasonable accommodation of the plaintiff's disability. *See Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991). It does not require the perfect elimination of all disadvantage that may flow from the disability; it does not require a lowering of standards, *Southeastern Community College v. Davis,* 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979), nor that the employer "make 'funda-

mental' or 'substantial' modifications" in order to eliminate the disadvantages flowing from the disability. *Alexander v. Choate,* 469 U.S. 287, 300, 105 S.Ct. 712, 719–20, 83 L.Ed.2d 661 (1985). It does not require the employer to provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable. *See Carter v. Bennett,* 840 F.2d 63, 67 (D.C.Cir.1988).

■ In our view, the district court properly granted summary judgment in favor of the defendants. The defendants demonstrated without contradiction that they made reasonable accommodation. They provided visually disabled candidates with a tape recording of the examination, a tape recorder (as well as permission to use their own tape recorder if they preferred), a reader-assistant to help with the operation of the recorder and to read them questions and answers, a private room, and double the time afforded to other test-takers.

The plaintiffs' complaint is addressed not to the accommodations provided by the defendants, but to the manner in which two reader-assistants carried out their duties. However, there is neither allegation nor evidence that the defendants were responsible for the faulty performance of those two readers. There is no allegation that the DOP failed to instruct or train the readers properly. In the absence of such allegation, we reject the contention advanced by the EEOC as amicus that the defendant had some greater obligation to provide evidence of the training or qualifications of the readers. Plaintiffs offered no rebuttal or impeachment of the affidavit of Denham Ehlers, the Chief of the DOP's Test Administration Division, that each "amanuensis [was] instructed to speak only when necessary, such as to repeat the candidate's answer to each test question prior to marking the answer sheet." The district court therefore concluded that the

---

1. At the time the plaintiffs filed suit, § 504 of the Act, 29 U.S.C. § 794(a), provided in part:

   No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal fi-

nancial assistance or under any program or activity conducted by any Executive Agency....

After initiation of the suit, the Act was amended to substitute "a disability" for "handicaps" and "disability" for "handicap." *See* 1992 Amendments, Pub.L. No. 102–569 § 102(p)(32).

disturbances of which the plaintiffs complain were not the result of discrimination prohibited by the Act, but rather "random occurrences which, by chance, adversely affect" disabled employees or candidates. (It stated: "they were victims of unfortunate improprieties committed by personnel of defendants, but not of disability-based discrimination.")

██ We agree. Where an institution has made reasonable accommodation to relieve a disabled person of the disadvantages of the disability, it will not be found to have discriminated, or practiced disability-based exclusion in violation of the Act, merely because personnel employed by the institution as part of that accommodation fail to perform their assigned role to perfection in accordance with their instructions.

With reference to the readers' disruptive chatter, the district court also correctly noted that this was a disadvantage unrelated to the disability; non-disabled test takers could have easily been disturbed by a disruptive monitor or by another test-taker.

## CONCLUSION

The judgment of the district court is affirmed.