**Wilhemenia FRANCIS, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, Defendant.**

**No. CV 94–0113.**

United States District Court, E.D. New York.

April 25, 1996.

---

Claire C. Tierney, Holtsville, New York, for Plaintiff.

Zachary Carter, United States Attorney, Eastern District of New York, Tracey L. Salmon, Assistant United States Attorney, Brooklyn, New York, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Wilhemenia Francis ("Francis") claims that she was dismissed from her job as a modified Distribution Clerk (working four (4) hours per day, five (5) days per week) on November 12, 1991, because she was a black Hispanic female with a physical handicap, due to degenerative arthritis of both knees, on the pretext that she misrepresented her physical condition. (Comp. ¶¶ 7 & 8).

Marvin T. Runyon, in his official capacity, denies the material allegations of the complaint, except admits that Francis was capable of performing her job duties for four (4) hours per day, five (5) days per week. Defendant alleges "that he had legitimate, non-discriminating reasons for all of his actions." (Ans. ¶ 29).

The issues of fact were tried to the court. The court finds as follows:

Francis is a black Hispanic woman. Francis was employed by the United States Postal Service ("Postal Service") on November 8, 1975, after having served as a temporary postal worker in 1974. On June 17, 1978, Francis voluntarily transferred to the West Islip Post Office to work as a letter carrier.

On September 18, 1978, Francis suffered an injury to her right knee while on duty as a result of degenerative arthritis. The Office of Workers' Compensation Program ("OWCP") of the Department of Labor ("DOL") found her totally disabled and awarded her compensation benefits.

Claims for Workers' Compensation of postal employees injured in the performance of their work are filed with the OWCP of the DOL. Compensation claims are heard and determined by the OWCP. The Injury Compensation Department of the Postal Service acts as an agent for OWCP in receiving claims of postal employees and submitting the claims for hearing and adjudication by OWCP.

On May 17, 1980, Francis left the Postal Service due to her total disability. She received Workers' Compensation benefits as a

totally disabled beneficiary until September 26, 1986.

On September 16, 1986, the Postal Service offered Francis reemployment as a part-time Distribution Clerk (Modified), which was a limited-duty position (Rehab Clerk) in the Rehabilitation Program in the Hicksville Post Office. On September 26, 1986, she began working part-time in that position. Francis received partial (4 hours) benefits from the OWCP while she was working as a Rehabilitation Clerk for the Hicksville Post Office. The part-time employment (four (4) hours per day, five (5) days per week) consisted of sorting, distributing and dispatching outgoing mail on the modified distribution case. A distribution case is a shelving unit with various slots for the sorting of various pieces of mail.

On November 5, 1986, Francis re-injured her knee. She filed a Notice of Employee's Reoccurrence of Disability and Claim for Pay/Compensation of her knee injury with DOL for being totally disabled. She remained out of work until May 7, 1987. She then claimed a reoccurrence of total disability on May 28, 1987, and remained totally disabled until February 3, 1988.

On January 22, 1988, the Postal Service offered and Francis accepted a position in the Rehabilitation Program as a distribution clerk at the Mid Island Postal facility.

On June 7, 1988, Francis claimed a reoccurrence of her knee injury and on June 9, 1988, she filed a Notice of Employee's Reoccurrence of Disability and Claim for Pay/Compensation for total disability. She returned to sedentary work on a part-time basis in the Rehabilitation Program in October, 1989. She claimed total disability in December, 1989 and returned to a four-hour limited duty Rehabilitation Program position in March, 1990 at the Hicksville Post Office.

Francis claimed a reoccurrence of her knee injury on June 29, 1990. She claimed that the injury was caused by a fall to the ground on the way to the bus she generally uses that takes her to the Long Island Rail Road station where she boards the train to work. Her physician, Dr. Robert Bernzweig, found a "contusion of the left knee" and determined that she was totally disabled.

On July 2, 1990, Francis submitted a claim for Compensation on Account of Disability based on the claimed reoccurrence of her injury on June 29, 1990. She claimed she was totally disabled from June 29, 1990 to July 8, 1990. Francis did not return to work until July 9, 1990.

On July 3, 1990, Steve Yammond, an acting Senior Injury Compensation Specialist, by telephone, offered Francis a limited-duty job within her then current restrictions. Francis declined, stating that she could not walk because her left knee was swollen and she required another week of rest. The videotape of Francis on July 3 shows her walking her dogs near her residence. Walking the dogs required that she descend the stairway (15–16 steps) leading from her apartment on the second floor and climb the stairway to return to her apartment.[1] The gait was normal. Francis walked her dogs on July 4, 5 and 6. The videotape shows her performing naturally and normally. The July 6 demonstration shows her walking at a fast pace.[2]

On July 6, 1990, Francis was observed leaving her apartment after walking her dogs, and driving her vehicle to an apartment in Brentwood. Before returning to her apartment in Bay Shore, Francis drove to a supermarket to do some minor personal shopping. In all of these activities, Francis displayed no difficulty in performing them.

On July 9, 1990, plaintiff returned to work part-time in her limited duty Rehabilitation Program position and was scheduled to work four hours per day. When Francis returned to work, she drove her vehicle to the Deer Park station of the Long Island Rail Road. She walked to the station from the parking lot and climbed the stairs to the platform without difficulty. She did the same on succeeding days.

---

1. Francis testified:

   "Well, I would walk my dogs across the street in front of my apartment, and around the corner from my apartment. It would take no longer than three or four minutes to walk my dogs." (Tr. p. 32).

2. We reject plaintiff's contention that the videotapes are suspect.

On July 13, 1990, the Acting Supervisor of Mails, Madeline Buckley, arranged for a fitness-for-duty ("FFD") examination by Dr. Yvonnecris Veal, Field Division Medical Officer at the Mid–Island Postal Facility. Francis' deception concerning her physical condition continued during the FFD examination by Dr. Veal. She told Dr. Veal that she was home-bound during the week of June 30 until July 7.[3] Dr. Veal was of the opinion that Francis was capable of performing limited duty in a restricted (sedentary) position "eight hours a day instead of the four hours a day that her doctor had recommended." (Tr. p. 133).

When Buckley transported Francis for the FFD examination, Francis concealed her ability to drive to the Long Island Rail Road station by permitting Buckley to take her back to her home in Bay Shore after the examination by Dr. Veal. She then took public transportation to the Deer Park station of the Long Island Rail Road, where her car was parked. She drove her car back to her residence in Bay Shore.

OWCP denied the July 2, 1990 claim on September 21, 1990 on the ground that Francis' condition was due to a non-employment related injury and not due to a spontaneous return of symptoms relating to the 1978 injury. That decision was reversed on appeal and Francis was awarded compensation.

Francis claimed she again re-injured her knee on September 19, 1990. She stopped work on October 1, 1990, and returned to a four-hour day, limited-duty rehabilitation position on February 25, 1991. During this period of claimed temporary total disability, Francis walked her dogs on February 13, 1991 and February 20, 1991. Francis was awarded compensation for the claimed September 19, 1990 reoccurrence of her knee injury for the period until February 25, 1991, based on her claim of temporary total disability.

Postal Inspector William D. Hayes, whose duty it was to investigate questionable workers' compensation claims reported in a memorandum to the "General Manager/Postmaster" dated April 10, 1991, *inter alia,* that Francis made misrepresentations concerning her activities from June 30, 1990 to July 7, 1990, and the temporary total disability claim resulting from the alleged re-injury on September 19, 1990.

Hayes and Postal Inspector Thomas Tretola interviewed Francis at the Hicksville Post Office on April 26, 1991. She told the inspectors that she generally got to the Long Island Rail Road station by bus. She stated that at times she drove her vehicle short distances by using her left foot (on the brake). She denied walking her dogs during the period June 30 to July 7, 1990, and denied walking her dogs on February 13 and February 20, 1991.

On May 15, 1991, Hayes again reported to the General Manager/Postmaster enclosing a letter to Alonza A. Hart, Jr., Acting Director of OWCP referring to the videotape recordings showing that Francis was not totally disabled as she claimed.

On September 3, 1991, Hayes issued a Supplementary Investigatory Memorandum to the General Manager/Postmaster enclosing a report of Dr. Richard A. Goodman's examination of Francis on July 1, 1991, stating, "[s]he had been capable of performing her regular duty as a sedentary mail sorter or other secretarial occupation from the beginning of the alleged trauma." Hayes suggested that a copy of Dr. Goodman's report might alert OWCP "to this potential overpayment of compensation benefits."

On September 17, 1991, Michael Berta, Acting Superintendent of Postal Operations, issued a Notice of Proposed Removal to Francis. The Notice of Proposed Removal specifically stated the charge: Misrepresentation of your Physical Restrictions.[4] Francis was charged with deliberately failing to tell physicians who examined her of her true physical abilities. The Notice summarized the charges of misrepresentation, detailed

---

3. Francis told Dr. Veal that "she stayed in the house for the whole week.... During that week her cousin walked the dog." (Tr. p. 132).

4. We find that the reason Francis claimed inability to report for work was to support her claims for workers' compensation. We do not pass on the merits of her claims.

the proof to support the charges, and offered Francis the opportunity to answer the charges.

By letter dated October 1, 1991, Francis denied that she misrepresented her physical restrictions. She states that her medical condition "never barred me from walking my dogs ..."; that she can drive her vehicle "for short distances...."[5]

On November 1, 1991, Paul Bauccio, Manager of Station and Branch Operations, sent Francis a Letter of Decision informing her of the decision to terminate her employment with the Postal Service effective November 12, 1991. Plaintiff filed a grievance of her removal and an arbitrator issued a favorable decision to the Postal Service. Plaintiff filed a complaint with the EEOC and the administrative judge recommended a decision of no discrimination on the part of the Postal Service. Francis continues to receive four hours of Workers' Compensation benefits in the amount of $849.00 every 28 days.

The representations made to Dr. Veal, Yammond and Buckley were false statements relating to her ability to get to work, whether for four or eight hours. The evidence showed that Francis was able to report for work, i.e., videotapes showing Francis walking her dogs and driving her vehicle to the Deer Park railroad station parking lot on July 9.[6] The Letter of Decision, removing Francis states:

> The record indicates you *misrepresented your physical restrictions* while claiming to be totally disabled from work since July 1990.... Your removal is, therefore, necessary to promote the efficiency of the Service. This is due to the fact that your supervisors no longer have any confidence in your ability to report for duty ready, willing and able to discharge your duties

conscientiously and effectively (emphasis added).

Defendant concedes that Francis suffered degenerative arthritis in both knees. Three operations were performed on the right knee and one operation was performed on the left knee. Francis suffered varying degrees of pain and swelling of the knees at various times.

Francis states the issue to be, "Ms. Francis' inability to consistently report to work was the sole reason for her discharge" (Brief p. 17) [and] "[d]efendant seeks to avoid liability by claiming that Ms. Francis was not fired because of her disability but because she failed to show up for work when defendant believed she was not totally disabled." (Brief. p. 19). On the facts found and herein discussed, the real issue in this case is Francis' misrepresentation of her physical restrictions as the reason for termination of her employment.

Francis claims discrimination because of race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and violation of her rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

The issue of Francis' misrepresentation of her physical restrictions as the reason for the termination of her employment raises two questions: (1) whether the Postal Service intentionally discriminated against Francis due to her race and sex; and (2) whether the Postal Service discharged an "otherwise qualified" individual, without making reasonable accommodation, "solely by reason of her disability."

### Title VII Claims

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) states:

---

5. At the time of writing the letter, Francis was aware of the videotaping of her activities. She does not deny: (1) that she told Yammond on July 3, 1990, that she had to rest her swollen knee for a week; (2) that she told Dr. Veal on July 13, 1990, that she was home-bound during the week of June 30, 1990, and that her cousin walked the dogs; and (3) that she failed to tell Buckley that her vehicle was parked at the Deer Park station parking lot.

6. The court is aware, as Francis claims, that this was after her claimed period of total disability (June 30 to July 7) but nevertheless it serves as some evidence contradicting her claim of total disability to July 7 and further bears on her credibility.

(a) **Employer practices.** It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

In a Title VII case, a three step process governs evidentiary burdens. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Sumner v. United States Postal Service,* 899 F.2d 203, 208–09 (2d Cir.1990); *Gilman v. Runyon,* 865 F.Supp. 188, 191 (S.D.N.Y.1994); *James v. Runyon,* 843 F.Supp. 816, 822–24 (N.D.N.Y.1994), *aff'd,* 47 F.3d 1158 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 126, 133 L.Ed.2d 75 (1995); *Fernandez v. United States Postal Service,* 804 F.Supp. 448 (E.D.N.Y.1992).

■ First, plaintiff has the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. To establish a *prima facie* case, plaintiff must show: (1) she was within a protected group; (2) she was performing her duties satisfactorily; (3) she was discharged; and (4) her discharge occurred in circumstances giving rise to an inference of discrimination based on her membership in that group.[7] *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 83 (2d Cir.1990); *Ramseur,* 865 F.2d at 464; *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.), *cert. denied,* 474 U.S. 829, 106

S.Ct. 91, 88 L.Ed.2d 74 (1985); *Powell v. Syracuse Univ.,* 580 F.2d 1150, 1154–55 (2d Cir.), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978).

■ Second, if plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). *See Williams v. Frank,* 757 F.Supp. 112, 117 (D.Mass.1991), *aff'd,* 959 F.2d 230 (1st Cir. 1992) ("The arbitration decision in favor of the Postal Service is more than enough to meet the defendant's burden of production at this stage of the *McDonnell Douglas* framework."). The defendant's reason for terminating Francis was that she misrepresented her physical restrictions.

■ Third, plaintiff has the burden of proving by a preponderance of the evidence that the defendant's proffered reason is not the true reason, but instead, is a pretext for discrimination.[8] *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). "Pretext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, or by reliance on the evidence comprising the *prima facie* case, without more, *see St. Mary's Honor Center v. Hicks,* 509 U.S. at 510–12, 113 S.Ct. at 2749." *Chambers,* 43 F.3d at 38. At all times, plaintiff has the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. *St. Mary's Honor Ctr.,* 509 U.S. at 510–12, 113 S.Ct. at 2749.

■ The most probative means of proving pretextual discharge is to demonstrate that similarly situated white and/or male employ-

---

7. In assessing the fourth factor, direct evidence is not required. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464–65 (2d Cir.1989). Rather, a showing that the proffered justification is pretextual is sufficient to support an inference of intentional discrimination. *Id.* at 465.

8. "[P]laintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and the prohibited factor was at least one of the 'motivating' factors." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995).

ees were treated differently. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. To prove that her discharge occurred in circumstances giving rise to an inference of discrimination, Francis cites examples of other white male and female employees who were allegedly treated better.

■ For evidence of other employees to be relevant, the employees must be similarly situated to plaintiff. *Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531, 1546–47 (S.D.N.Y.1986), *aff'd,* 814 F.2d 653 (2d Cir.1987) (female employee discharged for poor job performance could not complain that her employer failed to offer alternatives such as demotion or transfer where employee never requested such alternatives when notified of decision to terminate) (citing *Lieberman v. Gant,* 630 F.2d 60, 68 (2d Cir.1980)); *see also Henry v. Daytop Village, Inc.,* 42 F.3d 89, 96–97 (2d Cir.1994) (former employee failed to produce evidence sufficient to create genuine issue of material fact that she was disciplined more harshly than similarly situated white and/or male employees where evidence consisted of former employee's uncorroborated allegations).

■ It is important to note that:
Employees are not "similarly situated" merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.
*Mazzella,* 642 F.Supp. at 1547. Plaintiff must also establish that the other employee's acts were of "comparable seriousness" to her own infraction. *Lanear v. Safeway Grocery,* 843 F.2d 298, 301 (8th Cir.1988) (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825); *see also Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992) ("It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must

show that the 'comparables' are similarly-situated *in all respects.*"); *Box v. A & P Tea Co.,* 772 F.2d 1372, 1379 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986) (two employees are not similarly situated when the offense each is accused of is not comparable).

Francis has attempted to show that the following postal employees were similarly situated to her and were treated differently: Annette Domiano (white female); Thomas Newell (white male); John P. Martinucci (white male); Martin E. Smith (white male); Philip Lafferty (white male); Linda Bonomo (white female); Jay Brieger (white male); Donald Sittig (white male); Tina Realmutto (white female); Jerry Dolce (white male); and Raymond Megna (white male). The court is not convinced that these employees were similarly situated and even if they were, they were not treated differently and the circumstances did not rise to an inference of discrimination.

■ In discrimination actions, a court is not to second-guess the defendant's judgment as long as it is not for a discriminatory reason. *Hansen v. Dean Witter Reynolds Inc.,* 887 F.Supp. 669, 673 (S.D.N.Y.1995); *Gilman,* 865 F.Supp. at 193. An employer may exercise business judgment in making personnel decisions as long as they are not discriminatory. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) ("Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions."); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

■ We find that Francis failed to prove that the reason for the termination of her employment was discriminatory. She failed to prove that the defendant's reason for terminating her, i.e., misrepresentation of her physical restrictions, was pretextual. We further find that had Francis been a white male suffering the same physical impairments, he would have been terminated had he misrepresented his ability to report for work.

### Rehabilitation Act Claim

The Rehabilitation Act of 1973 states, in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 7(8) [29 USCS § 706(8) ], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity ... by the United States Postal Service.

29 U.S.C. § 794(a).

■ In a discrimination case under 29 U.S.C. § 794, the plaintiff has the initial burden of proof. *Sedor v. Frank,* 756 F.Supp. 684, 686 (D.Conn.1991). To establish a *prima facie* case of unlawful discrimination, plaintiff must prove: (1) she is an individual with a disability within the meaning of the Act; (2) she is otherwise qualified for the position; (3) she was discharged from the position solely because of her disability; and, (4) the position was part of a program or activity of the postal service. *Borkowski v. Valley Cent. School Dist.,* 63 F.3d 131, 135 (2d Cir.1995); *Sedor v. Frank,* 42 F.3d 741, 746 (2d Cir.1994), *cert. denied sub nom., Sedor v. Runyon,* — U.S. —, 115 S.Ct. 2279, 132 L.Ed.2d 283 (1995) (citing *Joyner by Lowry v. Dumpson,* 712 F.2d 770, 774 (2d Cir.1983); *Doe v. New York University,* 666 F.2d 761, 774–75 (2d Cir.1981)); *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1035 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993).

The term "individual with a disability" is defined in 29 U.S.C. § 706(8)(B) as one who: [9]

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

■ An "otherwise qualified" person within the meaning of the Act is defined by 29 C.F.R. 1613.702(f) and with respect to employment, is one who:

> with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others. . . .

In determining whether a person is "otherwise qualified," one must consider plaintiff's ability to perform the job's essential functions despite the handicap and whether reasonable accommodation by the employer would allow plaintiff to perform those functions. *Sedor,* 756 F.Supp. at 687; *see also Gilbert v. Frank,* 949 F.2d 637, 641 (2d Cir. 1991) ("otherwise qualified" has been interpreted generally to mean one who can meet a program's requirements in spite of his or her handicap). Plaintiff bears a burden of production "to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski,* 63 F.3d at 138.

■ In order to show that her discharge was solely by reason of her disability, plaintiff must show:

> (a) that there was a 'causal connection' between that disability and the employment decision, *see, e.g., Teahan v. Metro–North Commuter Railroad Co.,* 951 F.2d 511, 517 (2d Cir.1991), *cert. denied,* 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992), and (b) that the disability was the only cause of the decision, *see, e.g., id.* at 515–16.

*Sedor,* 42 F.3d at 746. If plaintiff fails to prove any of the four elements, the claim must fail. *Sedor,* 42 F.3d at 746.

---

9. *See* Rehabilitation Act Amendments of 1992, Pub.L. 102–569, § 102(p)(32), 106 Stat. 4344, 4360 (1992) (substituting "disability" for "handi-cap"); *see also* 29 C.F.R. 1613.702(a) (provides the identical definition of "handicapped person" and "individual with a disability").

Next, the defendant has the burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable. *Borkowski*, 63 F.3d at 138. This burden "merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship."[10] *Id.; see also Borkowski*, 63 F.3d at 136 (regulations say nothing about who bears the burden of demonstrating that an accommodation is reasonable but regulations place the burden on the employer to produce evidence and persuade the factfinder that an undue hardship would exist).[11] An accommodation is not reasonable if it imposes "undue financial and administrative burdens" or requires "a fundamental alteration in the nature of [the] program." *School Bd. of Nassau County, Florida v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 412, 99 S.Ct. 2361, 2369–70, 60 L.Ed.2d 980 (1979)).

We find that Francis failed to establish a *prima facie* case of discrimination. She was not "otherwise qualified" because she misrepresented her physical restrictions. Because of Francis' misrepresentation, she failed to report to work when she was physically able to do so.

A disabled individual cannot be "otherwise qualified" for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the statute. The Rehabilitation Act mandates nondiscrimination against disabled individuals; it does not waive basic prerequisites to service.

*Wilber v. Brady*, 780 F.Supp. 837, 840 (D.D.C.1992); *see also Leckelt v. Board of Comm'rs of Hosp. Dist. No. 1.*, 909 F.2d 820, 830 (5th Cir.1990) (licensed practical nurse who refused to provide hospital with HIV test results was not "otherwise qualified" to perform his job since he failed to comply with employer's policies for monitoring infectious diseases); *Guice–Mills v. Derwinski*, 772 F.Supp. 188, 199 (S.D.N.Y.1991), *aff'd*, 967 F.2d 794 (2d Cir.1992) (former federal employee who, as result of depression and sedating medication, was unable to report to work at appropriate time was not otherwise qualified for position as head nurse); *Dowden v. Tisch*, 729 F.Supp. 1137, 1138 (E.D.Tex.1989), *aff'd*, 902 F.2d 957 (5th Cir. 1990) ("When an employee is terminated for other conduct not related to the handicap which, standing alone, merits his termination, the employee is not otherwise qualified for his position.").

We find that the defendant made reasonable accommodations. Francis claims that defendant failed to provide physical therapy, pain management therapy and a work hardening program recommended by her doctor in violation of defendant's obligation to provide reasonable accommodations

---

**10.** The regulations implementing Section 504 state:

(b) Reasonable accommodation may include: (1) Making facilities used by employees readily accessible to and usable by handicapped persons; and (2) *Job restructuring, part-time or modified work schedules,* acquisition or modification of equipment or devices, the provision of readers or interpreters and other similar actions.

45 C.F.R. § 84.12(b)(1)(2) (emphasis added).

(c) In determining pursuant to paragraph (a) of this section whether an accommodation would impose an undue hardship on the operation of a recipient's program, factors to be considered include: (1) The overall size of the recipient's program with respect to number of employees, number and type of facilities, and size of budget; (2) The type of the recipient's operation, including the composition and structure of the recipient's work force; and (3) The nature and cost of the accommodation needed.

45 C.F.R. 84.12(c)(1)(2)(3).

**11.** "The burden on the employer, then, is to perform a cost/benefit analysis.... [W]hile the plaintiff could meet her burden of production by identifying an accommodation that facially achieves a rough proportionality between costs and benefits, an employer seeking to meet its burden of persuasion on reasonable accommodation and undue hardship must undertake a more refined analysis. And it must analyze the hardship sought to be imposed through the lens of the factors listed in the regulations, which include consideration of the industry to which the employer belongs as well as the individual characteristics of the particular defendant-employer." *Borkowski,* 63 F.3d at 139.

under the Rehabilitation Act.[12] She also claims that defendant violated its obligation of reasonable accommodations by failing to provide a chair with a back.

 Francis concedes that defendant made reasonable accommodations in assigning her to duties she could perform based on her disabilities under its Rehabilitation Program at the Hicksville Post Office, which was close to her residence. We find that the defendant made reasonable accommodations in assigning Francis to the Rehabilitation Program at the Hicksville Post Office. *See Guice–Mills v. Derwinski,* 967 F.2d 794, 798 (2d Cir.1992) (employer may reassign employee with a disability as reasonable accommodation).

 Although the Postal Service could have provided a chair with a back, this does not mean that they were unreasonable in their accommodations. We find it was not necessary for the Postal Service to provide physical therapy, pain management therapy and a work hardening program. An employer is not required to provide every accommodation a disabled employee may request, as long as the accommodation provided is reasonable. *Fink v. New York City Dept. of Personnel,* 53 F.3d 565, 567 (2d Cir.1995). " 'That [the employer] could have provided a different set of reasonable accommodations or more accommodations does not establish that the accommodations provided were unreasonable or that ... additional accommodations were necessary.' " *Misek–Falkoff v. International Business Machines Corp.,* 854 F.Supp. 215, 228 (S.D.N.Y.1994), *aff'd,* 60 F.3d 811 (2d Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 522, 133 L.Ed.2d 429 (1995) (citing *Wynne v. Tufts Univ. School of Medicine,* 1992 WL 46077 (D.Mass.), *aff'd,* 976 F.2d 791 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)).

 We find that Francis' disability was not a factor in the termination of her employment and therefore she was not terminated "solely because of her disability." She was terminated because she misrepresented her physical restrictions, and based upon that misrepresentation failed to report for work.

Plaintiff's claims for discrimination because of race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and violation of her rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) are dismissed and any other request for relief is denied. The complaint is dismissed and it is

SO ORDERED.

---

12. The government contends that reasonable accommodation was not raised in Francis' administrative EEO action and therefore the court does not have jurisdiction over the reasonable accommodation issues now raised. However, "the proper scope of any private lawsuit resulting from the EEOC charge encompasses not only the claims presented in the charge but also those that reasonably could be expected to grow out of the EEOC investigation of the charge." *Drummer v. DCI Contracting Corp.,* 772 F.Supp. 821, 827 (S.D.N.Y.1991); *see also Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978); *Howard v. Holmes,* 656 F.Supp. 1144, 1147, n. 4 (S.D.N.Y.1987).