**Hamdy MUSTAFA, Plaintiff,**

v.

**PARK LANE HOTEL, INC., Defendant.**

**No. 97 Civ. 2355(BDP).**

United States District Court,
S.D. New York.

Aug. 27, 1998.

Stuart M. Mitchell, Nayack, NY, for Plaintiff.

Robyn Ruderman, Steinbrecher & Ross LLP, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### BACKGROUND

Plaintiff Hamdy Mustafa brought suit against his former employer, defendant Park Lane Hotel, Inc. (the "Hotel"), alleging that he was discharged from his position as chief night auditor in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.;* and Article 15 of the Executive Law of the State of New York.[1]

**1.** While plaintiff's complaint does not specify, this Court will assume that plaintiff's state law claim is brought under N.Y.Exec.Law, § 296 *et seq.*

Defendant now moves for summary judgment.[2] For the reasons stated below, defendant's motion is granted.

## FACTS

In December 1984, Mustafa was hired by the Hotel as a front officer cashier. At the time he was hired, Mustafa was 40 years old. In May 1987, Mustafa became head cashier, and in April 1988, he was promoted to chief night auditor. As chief night auditor, Mustafa was responsible for supervising other night auditors, ensuring that the staff complied with Hotel policy, balancing the Hotel's receipts from the previous day's operation, updating the computer system, closing out the data operation and handling the daily accounts. Mustafa's shift was from 11 p.m. to 7 a.m.

Defendant contends that in the summer of 1996, Freeman W. Hill, Jr., the general manager of the Hotel, initiated a policy requiring that all night auditors, including Mustafa, work behind the front desk in the lobby of the Hotel. Previously, night auditors had worked in the accounting office in the Hotel's basement, and at other locations throughout the Hotel. Hill initiated this policy to improve supervision of the activities of the night auditors, and to prevent the night auditors from eating, drinking, and smoking in the accounting office, which, on occasion, was found in disarray in the morning. Mustafa denies that the night auditors ever ate or smoked in the accounting office.

Defendant contends that, pursuant to Hill's instructions, Witoon Kumnderpun, the comptroller of the Hotel and the direct supervisor of all the night auditors, informed all night auditors, including Mustafa, of the new policy. Mustafa denies ever being informed of this policy by Hill, Kumnderpun, or any other member of the Hotel's staff.

According to the defendant, during the early hours of September 11, 1997, Edward Reysen, the Hotel's security guard, accompanied Mina Lee, a night manager, downstairs to the accounting department. Reysen and Lee found Mustafa in the accounting depart-

ment and Lee instructed him to return to the front desk in accordance with Hill's policy. Mustafa refused to leave.

Defendant claims that later that shift, Hill learned that Mustafa was downstairs in the accounting department and instructed Reysen to tell Mustafa that Hill wanted him working behind the front desk. Following Hill's orders, Reysen approached Mustafa and relayed Hill's instructions. In response plaintiff replied "tell him to go fuck himself." At that point Reysen reiterated Hill's instructions and Mustafa told Reysen he just needed five minutes, as he was finishing up. When Mustafa failed to appear after twenty minutes, Reysen returned to the accounting department and reiterated his earlier instructions. Mustafa stated that he had spoken to his boss, who had granted him permission to remain downstairs. Mustafa denies that this event occurred.

Defendant contends that between 7:00 and 7:30 a.m. Hill asked Reysen if Mustafa was still in the basement. Reysen responded that Mustafa was still downstairs and that Mustafa had said that Mustafa's boss had allowed him to remain downstairs in the accounting office. In response, Hill told Reysen that Hill was Mustafa's boss and that Mustafa had to listen to Hill. Later that morning, Hill directed Kumnderpun to terminate Mustafa for insubordination. At the time of Mustafa's termination, he was 52 years old. Mustafa was replaced by Nadeem Chaudry, his subordinate, who was 29, and who had considerably less experience than Mustafa.

Although plaintiff disputes defendant's account of the events on the evening of his termination, plaintiff does concede that a security officer instructed him to exit the accounting office as per Hill's directions, and plaintiff failed to comply.

Plaintiff claims that he was discharged because of his age, and that the alleged directions to work only behind the front desk in the lobby and not to use the accounting office were a subterfuge to mask his discrimi-

---

2. In his response to defendant's motion for summary judgment, plaintiff withdrew his claim under the ADA.

natory discharge. In support of his claims, plaintiff contends that Hill's alleged new policy was implausible because compliance would have prevented the auditors from fully performing their jobs, as they were required to use computers and obtain information from several sources throughout the Hotel. Plaintiff's contention is supported by Mustafa's and Nadeem Chaudry's affidavits, which describe how Hill's policy was unwise, unworkable, and not followed due to the fact that auditors were required to utilize computers and printer stations throughout the Hotel. Defendant, on the other hand, submits the affidavit of Tove Luth, the current Hotel Comptroller, who states that night auditors are assigned a password, which allows them to access the "Night Audit Menu" from most computer terminals in the Hotel, including those behind the front desk. Luth contends that the only duties that cannot be performed from behind the front desk are the daily tape backup of the Computer Lodging System, and the production of food, beverage, and telephone reports. Performance of these duties would require an absence from the front desk of twenty minutes at most.

Plaintiff claims that Chaudry's affidavit substantiates Mustafa's claim of discrimination by relating that Chaudry used the accounting office with Hill's knowledge and consent before Mustafa's discharge, and continued to do so after Mustafa's discharge as well. Plaintiff claims that in light of this fact it is clear that he was fired due to his advanced age, and not because of insubordination.

Plaintiff filed a charge of unlawful employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 26, 1997. The EEOC issued a notice of right to sue on March 7, 1997.

## DISCUSSION

■ In order to prevail under the ADEA, the plaintiff must first establish a *prima facie* case. To do this, the plaintiff must show:

(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination.

*Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994) (quoting *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1155 (2d Cir. 1993)). If the plaintiff meets this burden, the employer must demonstrate a legitimate nondiscriminatory reason for the discharge. If the employer satisfies that obligation, the burden then shifts to plaintiff to show that age was a substantial motivating factor in the discharge. *Woroski v. Nashua Corp.,* 31 F.3d at 108. To withstand a motion for summary judgment, the plaintiff must produce sufficient evidence to support a rational finding not only that the legitimate, nondiscriminatory reasons proffered by the employer were false, but that more likely than not the employee's age was the true reason for the discharge. *Id.* at 110 (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *see also Raskin v. Wyatt Co.,* 125 F.3d 55, 64 (2d Cir.1997).

While defendant concedes that plaintiff has established a *prima facie* for age discrimination under federal and state law, defendant contends that Mustafa was discharged because of insubordination. Thus, defendant has set forth a legitimate, nondiscriminatory explanation for its ultimate discharge of plaintiff sufficient to rebut plaintiff's *prima facie* case. *Rodriguez v. Gary Plastic Packaging Corp.,* No. 95 Civ. 4900, 1997 WL 16665 at *6, (S.D.N.Y. Jan.16, 1997) (insubordination is a legitimate nondiscriminatory cause for termination). As a result, plaintiff must show that defendant's proffered explanations for its actions are pretextual; that is, plaintiff must show both that the employer's stated reasons for discharge were false, *and* that discrimination, more likely than not, was a real reason. *St. Mary's Honor Center v. Hicks,* 509 U.S. at 515, 113 S.Ct. 2742; *Raskin v. Wyatt Co.,* 125 F.3d at 64; *Ferrante v. American Lung Assoc.,* 90 N.Y.2d 623, 626, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997). This the plaintiff has failed to do.

■ Plaintiff relies on *Binder v. Long Island Lighting Company,* 57 F.3d 193, 199 (2d Cir.1995), to assert that a finding of pretext

may in some cases constitute evidence of discrimination. While this is true, in this case plaintiff offers no additional evidence to prove discrimination, devoting his attention solely to showing that defendant's proffered reasons for discharge were false. Plaintiff's only "evidence" of age discrimination, therefore, is that Chaudry was younger and less experienced than he. A careful review of the admissible evidence proffered in opposition to defendant's motion reflects the notable absence of evidence that discrimination on the basis of age was the reason for plaintiff's discharge. This is fatal to plaintiff's claim.

While it is true that the *prima facie* case, together with a rejection of the defendant's proffered reasons for its actions *may* suffice to show intentional discrimination, such a finding is by no means automatic. *Fisher v. Vassar College*, 114 F.3d 1332, 1338 (2d Cir. 1997) (en banc), *cert. denied,* — U.S. —, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Here, assuming that plaintiff succeeded in making out a *prima facie* case, his evidence offered to establish an inference of discrimination was speculative. Plaintiff contends that it is inconceivable that defendant would terminate him from his position after years of dedicated quality service for such minor insubordination as refusing to exit the accounting room in the basement of the Hotel. Therefore, plaintiff contends that defendant must be misrepresenting its true reason for dismissing Mustafa, and since Chaudry is younger and less experienced than plaintiff, age discrimination must have been the motive behind plaintiff's dismissal.

Other than claiming that Hill's "new policy" was never instituted or enforced to the extent that defendant claims, plaintiff fails to challenge defendant's assertion that it was plaintiff's insubordination on the evening of September 11, 1997, that led to his dismissal.[5] Although plaintiff questions defendant's decision to terminate an employee of 12 years for what might be characterized as a minor infraction, this analysis is irrelevant to this Court's determination. *See Dister v. Continental Group Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988) ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons."); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason."). In short, plaintiff simply provides no evidence of discrimination against him on account of his age.[6],[7]

5. Plaintiff attempts to demonstrate that his termination was based on a discriminatory purpose, and not due to insubordination because defendant did not contest Mustafa's receipt of unemployment benefits. If plaintiff's discharge was due to misconduct, he would have been disqualified from receiving unemployment benefits under N.Y. Labor Law § 593. A grant of unemployment benefits, however, does not dispose of this issue because of the different standards involved. *See Fondel v. Grumman Aerospace Corp.*, 884 F.2d 657, 659 (2d Cir.1989) ("Under New York law an employee's conduct may be such that it justifies a 'for cause' dismissal, yet not rise to the level of misconduct that disqualifies him from unemployment insurance.") (citing *Claim of Hulse v. Levine*, 41 N.Y.2d 813, 814, 393 N.Y.S.2d 386, 361 N.E.2d 1034 (1977) (mem.)).

6. Defendant cites Chaudry's statements that he was not disciplined for similar infractions prior or subsequent to Mustafa's firing as evidence of discrimination based on differential treatment. *Francis v. Runyon*, 928 F.Supp. 195, 202–03 (E.D.N.Y.1996) ("[t]he most probative means of proving pretextual discharge is to demonstrate that similarly situated ... employees were treated differently"). However, Chaudry's testimony of his treatment before Mustafa's firing is not indicative of discrimination, since as the chief night auditor Mustafa may be held to a higher standard and was therefore not a similarly situated employee. *Id.* at 203. Moreover, Chaudry does not state that after he became chief night auditor, he was absent from the front desk for longer than the time necessary to perform those tasks he could not complete from the front desk; nor does he present evidence that he ever defied a direct order to return to the front desk. *Id.* ("[I]n order to be similarly situated, other employees must have ... engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.")

7. Plaintiff also makes cursory mention of a mixed motive discrimination claim, which the Court finds lacks merit. While the mixed motive analysis is similar to the pretext analysis described above, the mixed motive analysis requires a more concrete showing of discrimina-

## CONCLUSION

While this Court is mindful of the need for caution in granting summary judgment where intent and state of mind are implicated, *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219 (2d Cir.1994), plaintiff cannot withstand a motion for summary judgment on the grounds he sets forth. Accordingly, defendant's motion for summary judgment is granted. In view of the dismissal of plaintiff's federal claims, this Court declines to entertain his state claims. *See, e.g., Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995). The Clerk of the Court is directed to enter judgment for the defendant.

**SO ORDERED.**

tion. To withstand a motion for summary judgment under a mixed motive analysis, a *prima facie* case must be established through a showing of direct evidence of discriminatory animus. *Harris v. New York City Dep't of Homeless Services Eligibility Investigation Unit,* No. 97 Civ. 0432(SAS), 1998 WL 205334 at *4 (S.D.N.Y. April 28, 1998). Plaintiff has failed to meet this burden in this case.