Almethia **MIDDLETON**, Plaintiff,

v.

**METROPOLITAN COLLEGE OF NEW YORK, Defendant.**

**No. 06 Civ. 1711 (VM).**

United States District Court, S.D. New York.

April 18, 2008.

Robert Joseph Barsch, Robert J. Barsch, New York, NY, for Plaintiff.

Bruce Russell Millman, Fox Rothschild, LLP, Lisa Michelle Brauner, Littler Mendelson, P.C., New York, NY for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Almethia Middleton ("Middleton"), brought this action against defendant Metropolitan College of New York ("MCNY") alleging sexual harassment and retaliatory discharge under New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") and New York City Human Rights Law, New York City Admin. Code § 8–502 ("NYCHRL"). Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

MCNY filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Middleton conceded MCNY's arguments with regard to her claim of sexual harassment, and consented to dismissal of her sexual harassment causes of action, leaving only Middleton's retaliatory discharge claim. For the reasons stated below, MCNY's motion for summary judgment is GRANTED.

## I. BACKGROUND[1]

Middleton was employed by MCNY as an administrative assistant in the Welfare to Careers Program, and her direct supervisor was Rae Mack ("Mack"). On February 13, 2003, Mack called a staff meeting to address issues among the members her staff (the "February 13 Meeting"). In addition to Middleton and Mack, Lamont Williams ("Williams"), Candida Gonzalez ("Gonzalez"), Angienette Minton ("Minton"), and Jennifer Lerner ("Lerner") attended the meeting. All of the attendees reported directly to Mack. Mack opened the meeting by stating that she was concerned about tensions within her staff, and used a profanity to punctuate this statement.[2] Mack later received a written disciplinary notice from Latham relating to her use of a profanity on that occasion.

During the February 13 Meeting, following Mack's request that her staff members air their grievances, Williams stated that he had a problem with Middleton. Williams then became angry and out of control, and yelled "suck my dick" and "fuck you" at Middleton (the "Incident").

Following the Incident, Mack directed Williams to leave the premises. Middleton returned to her office and continued working until 6:00 p.m. that day. Mack told Middleton that she would speak with Susan Latham ("Latham"), MCNY's Human Resources Director, regarding the Incident, and reported it to Latham later that same afternoon. Mack stated that Williams's use of profanities and vulgar language was inappropriate, and recommended that he be fired. Latham agreed, and as Williams had already left the premises as directed by Mack, Latham planned to meet with Williams to terminate his employment the next morning.

On February 14, 2003, Latham and Mack met with Williams and terminated his employment for gross misconduct because of his behavior at the February 13 Meeting. At Williams's termination meeting, he reported to Latham that Middleton had also used similar vulgar language and profanities at the same meeting. Mack corroborated Williams's statement when questioned by Latham. Latham determined that Middleton would have to be disciplined, but was unable to meet with

**1.** The factual recitation set forth below is drawn from Defendant's Local Rule 56.1 Statement, dated September 17, 2007; Defendant's Memorandum of Law in Support of Motion for Summary Judgment, dated September 17, 2007; Defendant's Reply Memorandum of Law in Further Support of Motion for Summary Judgment, dated December 3, 2007; the Declaration of Susan Latham, dated 10, 2007 ("Latham Decl."); the Declaration of Lisa M. Brauner, dated September 17, 2007 ("Brauner Decl."); and the Declaration of Rae Mack, dated September 14, 2007 ("Mack Decl."). Except as quoted or otherwise cited, no other specific reference to these documents will be made.

The Court notes that it does not derive any facts from the Affidavit of Almethia Middleton, dated October 31, 2007 ("Middleton Aff.") as the affidavit contradicts or improperly adds to her deposition testimony. A party may not create an issue of fact by submitting an affidavit in opposition to a summary judg-

ment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. See Hayes v. New York City Dept. of Corr., 84 F.3d 614, 619 (2d Cir.1996) (holding that factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial) (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969)). Additionally, the Court does not rely on Plaintiff's Statement Pursuant to Rule 56.1, as the bare denials do not provide any reference to admissible evidence as required by Local Rule 56.1(d), and the additional paragraphs rely exclusively on the Middleton Aff., which the Court has previously stated should be disregarded.

**2.** Mack stated that the staff should use the meeting to "air out [their] shit." (Mack Decl., ¶ 6.)

her until February 19, 2003 (the "February 19 Meeting").

At the February 19 Meeting, Latham questioned Middleton about her conduct at the February 13 Meeting. Middleton denied using any profanities or making vulgar insults directed to Williams. Middleton also stated that Mack had done nothing to regain control over the meeting, and that she believe Mack had planned the Incident to get her fired. Latham told Middleton and Mack that she would have to conduct a further investigation of Middleton's conduct at the February 13 Meeting, and asked each of them to email her their versions of what had occurred at the February 13 Meeting.

Following the February 19 Meeting, Latham met with the other staff members who had attended the February 13 Meeting to investigate Middleton's conduct at the meeting. Gonzalez, Minton, and Lerner all reported that Middleton had actively engaged in the argument with Williams, and that each had yelled profanities, curses, and insults at one another. Lerner also reported that Middleton had responded "eat my pussy" in response to the Incident. All the attendees reported that Mack had attempted to calm the situation, but was not able to do so. Latham asked all three witnesses to email her their versions of the February 13 Meeting, which they did. On February 20, 2003, Mack emailed to Latham her summary of the February 13 Meeting.

According to Latham, after investigating the events of the February 13 Meeting, she made the decision to terminate Middleton on February 21, 2003, because she believed that Middleton's misconduct was similar to that of Williams, and it would be inconsistent to treat the two differently. On February 23, 2003, Latham emailed Mack and Middleton stating that she had investigated the situation and wanted to

meet with them, and she also reminded Middleton that she had not yet received Middleton's statement regarding the events of the February 13 Meeting. On February 24, 2003, Middleton emailed a statement to Latham, alleging that Williams and Mack had sexually harassed her. In her statement, Middleton reported that during the Incident, Williams had begun to unzip his pants and started to pull down his pants. (*See* Statement of Middleton, dated Feb. 24, 2003, attached as Ex. H to the Latham Decl.) Middleton also alleged that Mack had "created a hostile work environment" and "[s]exual harassment was demonstrated on her part." (*Id.*)

Latham responded by email on February 25, 2003, stating that she would need to investigate the situation further based on the allegations in Middleton's statement. Latham met with Middleton, who reported that she believed she was sexually harassed because of Williams's comments and gestures; that it was a request for a sexual favor. Middleton stated that there had been no incidents prior to the February 13 Meeting, and that she believed Mack had set up the meeting in order to get her fired. Latham then met with Mack concerning Middleton's allegations of sexual harassment, and Mack told Latham that she interpreted Williams's comment as a remark uttered in anger or frustration, not as a sexual request. Latham also re-interviewed the three other witnesses, and each reported that they did not remember seeing Williams try to pull down or unzip his pants. Lerner told Middleton that she understood the comment to be insulting and sarcastic, but not a sexual request, and she also reported that Middleton's comment in response was said in the same tone. Gonzalez also reported that she had interpreted the comment as an insult, rather than as a sexual request.

Latham concluded that there was no basis for Middleton's sexual harassment claim. On March 3, 2003, Latham met with Mack and Middleton to inform Middleton of her conclusions regarding Middleton's misconduct at the February 13 Meeting, and Middleton's allegation of sexual harassment against Mack and Williams. Latham then terminated Middleton's employment.

## II. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994).

## III. *DISCUSSION*

The analysis of a retaliation claim under NYSHRL and NYCHRL is identical to that under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et. seq. *See McMenemy v. City of Rochester,* 241 F.3d 279, 283 (2d Cir. 2001) (*citing Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir.1996)).

The sufficiency of a retaliation claim is evaluated under the three-step burden shifting analysis as elaborated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):(1) the plaintiff must make out a prima facie case of retaliation; (2) the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the complained of action; and (3) if the defendant meets its burden, plaintiff must adduce evidence sufficient to raise a fact issue as to whether the defendant's reason was merely a pretext for retaliation. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764, 768–69 (2d Cir.1998) (*citing Reed,* 95 F.3d at 1177).

■ To establish a prima facie case of such retaliation, the plaintiff must show: (1) participation in a protected activity and defendant's knowledge of the protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *See McMenemy,* 241 F.3d at 283 (*citing Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 113 (2d Cir.2000)).

MCNY argues that Middleton has failed to establish a prima facie case of retaliation because she has not demonstrated participation in a protected activity or a causal connection between the alleged protected activity and her termination. The Court agrees.

### A. *PARTICIPATION IN A PROTECTED ACTIVITY*

■ To prove participation in a protected activity, a plaintiff need only demonstrate that she had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law," not that the employer's conduct actually violated the law. *Quinn,* 159 F.3d at 769 (*citing Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d

590, 593 (2d Cir.1988)). The reasonableness of a plaintiff's belief is assessed in light of the totality of the circumstances. *See Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998) (*citing Reed*, 95 F.3d at 1178). An employee's belief that she was opposing an unlawful employment practice must also be objectively reasonable, in the sense that the asserted opposition must be grounded on sufficient evidence that the employee was the subject of discrimination and harassment at the time the protest to the offending conduct is registered. *See Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 135–36 (2d Cir.1999).

■ As proper context, it bears noting that sexual harassment claims under NYSHRL and NYCHRL are analyzed under the same standards of proof as that of Title VII, and thus, a sexual harassment claim is actionable "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Quinn*, 159 F.3d at 764–65 (*citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Whether an environment is "hostile" or "abusive" depends on the totality of circumstances, and courts must consider a variety of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (*quoting Harris*, 510 U.S. at 23, 114 S.Ct. 367). As a general matter, "isolated remarks or occasional episodes of harassment" are not actionable, but rather, "the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." *Id.*; *see also*

*Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577–78 (2d Cir.1989) (holding that to be actionable, the alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive").

■ The Court does not find sufficient evidence on the record before it from which a rational jury could reasonably determine that Middleton was engaging in a protected activity at the time she made her complaint of sexual harassment. The evidence fails to establish either that Middleton's belief was subjectively genuine or objectively reasonable.

Middleton asserted allegations of sexual harassment only after learning that Latham was investigating her actions at the February 13 Meeting to determine whether she had also behaved inappropriately. At Middleton's deposition, she testified that when Williams made the comment, his tone of voice was "angry, annoyed, hostile." (Deposition of Almethia Middleton, March 13, 2007 ("Middleton Dep."), 143:23–25, attached as Ex. B to the Brauner Decl.) Additionally, every witness to the incident reported that Middleton had actively engaged in the altercation using profanities and insults. Because of the timing of Middleton's complaint, as well as her own description of the incident and the reports of witnesses, the Court is not persuaded that at the time the incident occurred Middleton reasonably believed she had been a victim of sexual harassment, but rather, that she viewed the sexual harassment allegation as a means of avoiding disciplinary action for her own misconduct. *See Spadola v. New York City Transit Auth.*, 242 F.Supp.2d 284, 292 (S.D.N.Y.2003) (holding that employee could not use sexual harassment allegation as a form of intimidation and retaliatory tactic to avoid disciplinary charges to punish his behavior.)

Second, the totality of the circumstances also demonstrate that such a belief was not objectively reasonable. Williams's words, which were uttered during a heated encounter with Middleton, represented an offhand comment arising out of an isolated incident. Middleton acknowledges that Williams's conduct was not repeated, and she presents no evidence that it otherwise manifested a work environment objectively hostile or abusive and so pervasive or severe as to alter the conditions of her employment. *See Harris,* 510 U.S. at 21–22, 114 S.Ct. 367. The remark was spoken by a co-worker who was not Middleton's supervisor and, indeed, the comment occurred during a tense verbal altercation in front of Middleton's supervisor and three other co-workers. There is no evidence that Williams's comment was suggestive of an unwanted sexual advance that was indicative of severe and pervasive harassment that would unreasonably interfere with an employee's work or cause psychological harm, which form the hallmarks of serious misconduct ordinarily associated with unlawful sexual harassment.

The Court concludes that no rational jury could find that, under the totality of the circumstances evidenced here, Williams's isolated remark constituted a sufficient ground to support a good faith, objectively reasonable belief on Middleton's part that the offending conduct gave rise to a violation of either NYCHRL or NYSHRL, and that Middleton had engaged in protected activity when she made her sexual harassment allegation. Accordingly, Middleton has not satisfied the first element of a prima facie case of retaliation.

## B. CAUSAL CONNECTION BETWEEN THE PROTECTED ACTIVITY AND THE ADVERSE EMPLOYMENT ACTION

■ MCNY argues that even if Middleton satisfied the first element of her retaliation claim, she fails to establish the third element by demonstrating a causal connection between the protected activity and the adverse employment action. MCNY contends that since Latham made the decision to terminate Middleton prior to receiving her complaint of sexual harassment, there cannot be any causal connection between the complaint and Middleton's termination. Middleton argues that there is no documentary support for Latham's assertion that she made her decision prior to Middleton's complaint and that Latham gave no indication to Middleton at the February 19 Meeting that she was investigating Middleton's behavior.[3] The Court agrees with MCNY and finds that Middleton's evidence is insufficient to establish a causal connection between the alleged protected activity and the adverse employment action.

Latham's testimony that she made the decision to terminate Middleton prior to receiving her complaint of sexual harassment is buttressed by the email she sent to both Mack and Middleton on July 23, 2003, in which she stated that she had investigated the incident and would like to speak to both of them. Her use of the past tense indicates that the investigation was complete and a decision had been made. By not providing sufficient evidence to demonstrate that the alleged protected activity

---

**3.** Middleton also asserts in her Reply Memorandum in Opposition to Defendant's Motion for Summary Judgment that she reported the sexual harassment to Latham on February 19, 2003. However this statement relies on Middleton's Aff., which the Court has already noted should be disregarded because it inappropriately adds to her deposition testimony. At Middleton's deposition, she stated that she had told Latham what Williams had said at the February 13 Meeting, but stated that she did not remember anything else that was said at the February 19 Meeting. (*See* Middleton Dep., 202:23–25, 209:15–25; 214:2–3.)

preceded the adverse employment action, Middleton fails to establish the causation element of her retaliation claim. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir.2001) (stating that a plaintiff's burden "is a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement.") (*citing Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980)).

Additionally, Middleton's argument that she was not aware of Latham's investigation into her conduct is both completely unsupported by the record and irrelevant. First, it is undisputed that Latham did conduct an investigation into Middleton's conduct, as evidenced by her meetings with Middleton, Mack, and the other witnesses and their subsequent written statements. Second, at Middleton's deposition she stated that she was aware that Latham was investigating the incident, and that Latham would be speaking with Middleton's coworkers regarding the incident. (*See* Middleton Dep., 214:14–23.) Third, all the documentary evidence following the February 19 Meeting, including Mack's contemporaneous summary of it, (*See* Report of Meeting, dated February 24, 2003, attached as Ex. F to the Latham Decl.), and Latham's final memorandum to file regarding the incident, (*See* Memo to File, dated March 3, 2003, attached as Ex. C to the Latham Decl.), indicate that the meeting was called to discuss Middleton's misconduct at the February 13 Meeting. Finally, given that Williams had already been terminated as of February 14, 2003, Middleton's assertion that she was not aware that her conduct was under investigation is nonsensical. Latham had no need to investigate Williams's conduct as he had been terminated one week prior, and no one else's conduct was at issue.

Accordingly, the Court finds that Middleton has failed to establish the third element of a retaliation claim by not satisfying the causation requirement.

## C. *LEGITIMATE NON–RETALIATORY REASON FOR DISCHARGE*

■ MCNY argues that even if Middleton had satisfied the elements of a prima facie retaliation claim, her claim still fails because she cannot overcome MCNY's legitimate non-retaliatory reason for her termination, namely her misconduct at the February 13 Meeting. Middleton argues that the reasons for her termination were pretextual because (1) she never told Latham that she had used epithets or exchanged vulgar insults with Williams and (2) her conduct was analogous to that of Mack's use of a profanity to open the February 13 Meeting, and Mack was not terminated. The Court agrees with MCNY and finds that Middleton has not produced sufficient evidence to create a genuine issue of material fact as to whether MCNY's reason for her termination was merely a pretext for retaliation.

First, regardless of Middleton's denial regarding her behavior at the February 13 Meeting, every other attendee reported to Latham that Middleton had engaged in the altercation with Williams and had used profanities. Latham was entitled to rely on these reports and to terminate Middleton based on the reports of Middleton's misconduct, because, as a general matter, it is not the province of the courts to function as a super-personnel department and second-guess an employer's business judgment. *See, e.g., Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988); *Hansen v. Dean Witter Reynolds Inc.*, 887 F.Supp. 669, 673 (S.D.N.Y.1995); *Gilman v. Runyon*, 865 F.Supp. 188, 193 (S.D.N.Y.1994). MCNY has brought forward ample evidence, unrefuted apart

from conclusory allegations, that the termination of Middleton's employment was nothing more than a legitimate business decision, unconnected to the alleged sexual harassment claim.

Second, Middleton's argument that her conduct was analogous to that of Mack is also without support. Mack uttered a profanity that was not directed at any one person in particular, and it was clearly not a personal attack on another individual at the meeting. Middleton's and Mack's offenses differed so substantially that they cannot be considered similarly situated. Rather, Middleton's conduct (or certainly what Latham believed of Middleton's conduct) is most analogous to that of Williams, who Middleton has agreed deserved to be terminated.

Accordingly, Middleton has failed to produce sufficient evidence to support a finding that the charge of misconduct brought by MCNY as the legitimate, non-retaliatory reason for Middleton's discharge was false and merely a pretext for unlawful retaliation.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion for summary judgment of defendant Metropolitan College of New York (Docket No. 25) herein is GRANTED.

The Clerk of Court is directed to withdraw any pending motions and to close the case.

**SO ORDERED.**