**Rosetta WATSON, Plaintiff,**

v.

**Henry M. PAULSON, Secretary of the United States Department of Treasury, Defendant.**

**No. 04 Civ. 5909.**

United States District Court, S.D. New York.

Sept. 19, 2008.

---

Rosetta Watson, Brooklyn, NY, pro se.

Wendy Wei–Wenne Huang Waszmer, U.S. Attorney's Office, New York, NY, for Defendant.

VICTOR MARRERO, District Judge.

Plaintiff Rosetta Watson ("Watson") brought this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.* Watson alleges discrimination on the basis of race, sex, and age, hostile work environ-ment, and retaliation against defendant, the United States Department of Treasury ("Defendant" or the "Government"), her employer. Watson filed her first com-plaint in this case on March 23, 2004. By Order dated July 29, 2004, Watson was directed to re-file her complaint with proof that she had properly exhausted her ad-ministrative remedies to pursue Title VII claims. On September 15, 2004, Watson filed an amended complaint in this case (the "Amended Complaint"), and thereaf-ter filed several amended pleadings. The most recent, which is the subject of the matter before the Court, is the Fourth Amended Complaint (the "Complaint") filed on April 18, 2008.

Defendant now moves for summary judgment pursuant to Federal Rule of Civ-il Procedure 56 ("Rule 56"). For the rea-sons discussed below, Defendant's motion is GRANTED.

## I. BACKGROUND[1]

Watson has been employed with the In-ternal Revenue Service (the "IRS") since February 1, 1988. From 1997 through 2000, Watson was employed as a secretary at a federal grade/level of GS–5 in the IRS's School of Taxation. Watson was the only secretary in her division, and her duties included keeping the calendars of the other employees in the division and typing up reports. Only three of the thir-

---

**1.** The factual summary below is derived from the Complaint and Defendant Henry M. Paul-son's Memorandum of Law in Support of His Motion for Summary Judgment, dated Aug. 8, 2008 ("Def.'s Mem."). Except as quoted or otherwise cited, no other specific reference to these documents will be made. Defendant filed this motion for summary judgment on August 8, 2008 following a one-week exten-sion granted by Magistrate Judge Henry Pit-man. By letter dated August 29, 2008, the Government advised the Court that Watson had agreed to submit her opposition brief before September 5, 2008. On September 9, 2008, the Court noted that Watson was in default for failing to respond to the Govern-ment's motion by the due date of September 5, 2008, and granted her an extension until September 17, 2008, after which the Court would decide the motion on the basis of the papers then on file in the public record. Wat-son did not file her opposition by September 17, 2008. Accordingly, the Court decided this motion on the basis of the Complaint and Def.'s Mem.

teen employees in the division were located in New York, with the remaining employees located in other states.

In 2000, the IRS underwent an agency reorganization that resulted in changes to its internal structure. In the IRS realignment, some employees were "mapped" into new divisions in which they would continue to do work similar to that under the previous organizational structure. (Def.'s Mem. at 3.) Other employees became "transitional employees" for whom there was no available positions of permanent employment as a result of the restructuring. (*Id.*) Transitional employees were kept at the same grade and pay level and in the same commuting area while awaiting permanent placement. Transitional employees were placed in existing vacancies in their commuting area. Alternatively, these employees could apply for competitively announced positions outside their commuting area, volunteer for lower-grade positions, or take early retirement with buyouts.

As a result of the IRS's reorganization, Watson's division, the Coordinated Examination Institute ("CEI") of the School of Taxation, was moved into a new business division, the Large and Mid–Size Business Division ("LMSB"). There was a two-step process for integration under which (1) the entire organization was moved into the new division; and (2) the division would "realign or restructure" the inherited employees. (Def.'s Mem. at 4.) Watson's position and that of her supervisor were eliminated as a result of the realignment. Watson was issued a letter, dated January 25, 2001 (the "Transition Letter"), advising her that she had been designated a transition employee, informing her that she would continue at the same grade and pay until she was placed in a comparable position, and providing her with information regarding requests for early retirement or buyout.

Watson continued to work at the School of Taxation location at 290 Broadway, New York, New York until she was placed in a permanent secretarial position in the Wage and Investment Operating Division (the "WIOD"), located at West 44th Street, New York, New York, where her duties included answering phones, copying, typing reports and correspondence, and handling calendar reservations.

At or around the time of the IRS reorganization, Watson's direct supervisor in CEI, Sheila Caterraccio ("Caterraccio"), had begun the process of seeking a grade/level upgrade for Watson. Employees in the IRS could be upgraded to a higher grade/level through one of two processes: (1) through a desk audit under which an IRS classification specialist determines that an employee is already performing higher-graded work; or (2) through a revision of a position description to include higher-graded work and posting an announcement of the position as a competitive listing open to other applicants. Although Caterraccio made an initial request on behalf of Watson, no desk audit was conducted before both positions were eliminated as a result of the reorganization. When Watson was placed in her position at the WIOD, she remained at a grade/level of GS–5.

On March 13, 2001, Watson contacted the IRS's Equal Employment Opportunity ("EEO") office to seek counseling regarding her claim that the IRS had discriminated against her on the basis of her race, gender, and age, based on (1) the issuance of the Transition Letter; (2) failure to upgrade her grade/level to a GS–6; and (3) issuance of a cash performance award, rather than a high-quality increase ("HQI") in December 2000.

On April 25, 2001, Watson filed an Individual Complaint of Employment Discrimination with the Department of Treasury (the "April 25, 2001 EEO Complaint") alleging discrimination on the basis of her race, sex, and age. The April 25, 2001 EEO Complaint, as amended by letters dated June 5, 2001 and June 21, 2001, alleged discrimination based on the following events: (1) on February 16, 2001, Watson received the Transition Letter despite being mapped into LMSB on September 29, 2000; (2) Watson requested a cash award in the amount of $1,014, rather than an HQI award in December 2000, because Caterraccio told her that she would receive only $100 if she accepted the HQI award; (3) the IRS failed to upgrade Watson to a GS–6 position; (4) Watson was not included in a February 20, 2001 staff meeting held in St. Louis, Missouri (the "February 20, 2001 Staff Meeting"); and (5) in January 2001 Watson was required to take a Volunteer Income Tax Assistance ("VITA") training on a Saturday, which other employees were allowed to take on official time.

Watson also alleged two retaliation claims: (1) her EEO Individual Complaint Form was stolen and her transit subsidy checks were missing; and (2) she was subjected to a hostile work environment and/or retaliation when (i) she was reassigned to the Wage and Investment operating Division in May 2001, (ii) she received a fax showing that she had resigned, and (iii) an unauthorized person accessed her personnel file.

On July 26, 2002, an Administrative Judge ("AJ") held a hearing regarding the claims set forth in the April 25, 2001 EEO Complaint, and issued a decision, dated May 28, 2003, finding that Watson had failed to show that she was the subject of discrimination, retaliation, and hostile work environment by the IRS. Watson appealed the AJ's decision to the Equal Employment Opportunity Commission (the "EEOC"), which affirmed the AJ's findings with regard to Watson's claims by decision dated February 18, 2004.

Watson filed other EEO complaints on June 20, 2003, September 29, 2004, October 21, 2004, March 20, 2005, and May 16, 2007. These complaints, which remain pending before the EEOC, address events that allegedly occurred between December 2002 and November 2007.

The Complaint in this action contains the claims alleged in the April 25, 2001 EEO Complaint, as well as a litany of claims involving alleged conduct by the IRS and third parties, including three private attorneys; claims that were not asserted in the April 25, 2001 EEO Complaint and pre-date that filing; and claims that have been alleged in subsequent EEO complaints that are still pending before the EEOC and for which no right-to-sue letter has been attached to this pleading.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of

material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). The party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; the opposing party cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

Under Second Circuit case law, "the salutary purposes of summary judgement-avoiding protracted, expensive and harassing trials-apply no less to discrimination cases than to commercial or other areas of litigation." *Gaffney v. Department of Info. Tech. and Telecomm.,* 536 F.Supp.2d 445, 455 (S.D.N.Y.2008) (*quoting Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)).

■■■■ In addition, the Court is mindful that where, as here, a party appears pro se, courts are required to broadly construe pro se pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). The submissions of pro se litigants are to be liberally construed. *See, e.g., Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). However, that Watson is "proceeding pro se does not otherwise relieve [her] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* No. 00 Civ. 8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan.9, 2003).

### B. *FAILURE TO EXHAUST CLAIMS*

Defendants contend that Watson failed to exhaust all claims in connection with incidents that she alleges occurred prior to January 28, 2001 and all claims based on events that are the subject of subsequent EEO complaints currently pending before the EEOC. The Court agrees.

#### 1. *Claims Based on Incidents Occurring Prior to January 28, 2001*

■■■■ Before bringing a lawsuit under either Title VII or the ADEA, a federal government employee must timely "exhaust the administrative remedies at his disposal." *Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir.2001) (*quoting Downey v. Runyon,* 160 F.3d 139, 145 (2d Cir.1998)). Regulations promulgated by the EEOC require that federal employees alleging employment discrimination must initiate contact with an EEO counselor within forty-five days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action. *See* 29 C.F.R. § 1614.105(a)(1); *see also Belgrave,* 254 F.3d at 386. Failure to comply with these deadlines renders a claim time-barred, unless the claim is subject to equitable tolling. *See Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001) ("The 45–day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred."). A federal employee may not file an action in federal court until the administrative EEC process has been completed and fully exhausted. *See* 29 C.F.R. § 1614.110. The timing requirements, "though not jurisdictional, 'are not to be disregarded by courts out of a vague sympathy for particular litigants.'" *Lucenti v. Potter,* 432 F.Supp.2d 347, 357 (S.D.N.Y.2006) (*quoting Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).

Watson first sought EEO counseling for her claims of discrimination and retaliation on March 13, 2001. The Court finds that no evidence in the record that would warrant tolling of the forty-five day deadline. This means that any claims based on conduct alleged to have occurred more than forty-five days prior to Watson's first request for EEO counseling—prior to January 28, 2001—were not exhausted and should be dismissed.

Accordingly, the Court finds that all claims based on conduct that occurred prior to January 28, 2001 are dismissed because these claims were not exhausted.

### 2. Claims Based on Allegations Pending Before the EEOC

Watson alleges claims in the Complaint that are included in the five other EEO complaints currently pending before the EEOC. A Title VII claimant may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter. See, e.g., Shah v. New York State Dept. of Civil Serv., 168 F.3d 610, 613 (2d Cir.1999) (citing 42 U.S.C. § 2000e–5(e) and (f)).

■ Watson filed a right-to-sue letter with the Amended Complaint, which related to the April 25, 2001 EEO Complaint. The Complaint fails to identify or append a copy of any other right-to-sue letter she may have received from the EEOC regarding her five other pending complaints. The Court may properly consider "claims of discrimination reasonably related to the allegations in the complaint filed with the EEOC." Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1068 (2d Cir.1980) (per curiam). However, none of the additional allegations relate to the IRS's reorganization, and the issuance of a right-to-sue letter is not "an open license to litigate any claim of discrimination against an employer." Id. The Court finds that the claims in

the Complaint that are included in the five other EEO complaints currently pending before the EEOC are not reasonably related to the allegations in the April 25, 2001 EEO Complaint.

Accordingly, all claims based on events that are the subject of EEO complaints currently in litigation before the EEOC are dismissed, and Watson's only remaining claims are those included in her April 25, 2001 EEO Complaint.

### C. FAILURE TO ALLEGE PRIMA FACIE CASE ON REMAINING CLAIMS

Watson's remaining claims include her allegations regarding: (1) the receipt of the Transition Letter; (2) the HQI award; (3) the VITA training; (4) the February 20, 2001 Staff Meeting; (5) the failure to upgrade to a grade/level GS–6; and (6) retaliation and hostile work environment.

■ In assessing a plaintiff's Title VII claim on summary judgment, a court uses the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Gaffney, 536 F.Supp.2d at 456. Under this analysis, a plaintiff must first establish a prima facie case. Id. If the plaintiff establishes a prima facie case, the burden of production, but not persuasion, shifts to the employer, requiring the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant meets this intermediary burden, then the burden returns to the plaintiff to show by a preponderance of the evidence that the proffered legitimate reason "[was] not [the defendant's] true reason, but [was] a pretext for discrimination." Id. (quoting Woodman v. WWOR–TV, Inc., 411 F.3d 69, 76 (2d Cir.

2005)); *see also Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995) ("An employer's reason for [the adverse employment action] cannot be proven to be a pretext for discrimination unless it is shown to be false and that discrimination was the real reason.") (*citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–16, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original)). An employer will be entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000) (citing *St. Mary's Honor Ctr.,* 509 U.S. at 510–11, 113 S.Ct. 2742) (additional citations omitted).

 To establish a prima facie case of discrimination a plaintiff must show that: (1) she was within a protected group; (2) she was qualified for and satisfactorily performed the functions of her position; (3) she suffered an adverse employment action; and (4) the action took place in circumstances giving rise to an inference of discrimination. *See Gaffney,* 536 F.Supp.2d at 456 (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

 To establish an adverse employment action, a plaintiff must demonstrate that the employer's conduct resulted in "a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (citations omitted). The Supreme Court has stated that an adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The Government argues that Watson has failed to state a prima facie case with regard to the Transition Letter, the HQI Award, the VITA training, and the February 20, 2001 Staff Meeting because she has failed to demonstrate an adverse employment action. Alternatively, even if the actions were adverse, the Government contends that the IRS had legitimate, non-discriminatory reasons for each of its actions. With regard to Watson's claim that the IRS failed to upgrade her to a grade/level GS–6, the Government contends that there was a legitimate, non-discriminatory reason for the IRS's actions. Finally, with regard to the retaliation and hostile work environment claim, the Government argues that Watson has failed to establish a prima face case of retaliation or hostile work environment,

### 1. The Transition Letter

 After receiving the Transition Letter, Watson's grade/level and pay remained the same and she continued to work in the same location. After receiving her permanent placement in a secretarial division in the WIOD, Watson remained at the same pay and grade/level and retained similar duties and responsibilities as she had in her prior position, although she moved locations from downtown Manhattan to midtown Manhattan.

 A transfer that is truly lateral and involves no significant changes in an employee's conditions of employment is not an adverse employment action regardless of whether the employee views the transfer negatively. *See Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 128 (2d Cir.2004). However, "[a] lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's em-

ployment in a materially negative way." *Patrolmen's Benevolent Ass'n of the City of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir.2002) (*citing de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir.1996)). Nonetheless, "[i]f an employee 'earns the same salary, has the same benefits, works the same hours ... and has the same opportunities for promotion' following a transfer then there is no adverse employment action...." *Pimentel v. City of New York*, No. 00 Civ. 326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002) (*quoting Garber v. New York City Police Dept.*, No. 95 Civ. 2516, 1997 WL 525396, at *4 (S.D.N.Y. Aug.22, 1997)).

Watson has not established any material change in her pay, grade, or duties, nor has she alleged that the transfer altered the terms and conditions of her employment in a materially negative way. Accordingly, Watson has failed to establish a prima facie case regarding the Transition Letter because she has not demonstrated an adverse employment action.

#### 2. *The HQI Award*

■■■ While Watson's claim concerning her HQI award was not properly exhausted as the conduct alleged occurred prior to January 28, 2001, the Court will nonetheless address the merits of her claim. The Court finds that Watson has failed to allege an adverse employment action based on her claim that the IRS issued her a $1,014 cash award instead of a HQI. The denial of a raise or merit bonus where one was warranted would clearly constitute an adverse employment action. *See Ebanks v. Neiman Marcus Group, Inc.*, 414 F.Supp.2d 320, 334 (S.D.N.Y.2006). However, Watson has not alleged that she suffered any material loss based on the payment of the cash award rather than the HQI. Accordingly, Watson has not pled a

prima facie case with regard to her claim concerning the payment of the cash award, because she has not established an adverse employment action.

Additionally, even if the payment of the cash award, rather than the HQI constituted an adverse employment action, Defendant had a legitimate non-discriminatory, and uncontroverted, reason for issuing the cash award, namely, Watson's specific request for the cash award, rather than the HQI.

#### 3. *The VITA Training*

■■■ While Watson's claim concerning the VITA training was not properly exhausted as the conduct alleged occurred prior to January 28, 2001, the Court will nonetheless address the merits of her claim. Watson alleges that she was the subject of an adverse employment action because she was forced to attend VITA training on a weekend, rather than during her official duty hours. The VITA training is a volunteer program in which IRS employees learn how to assist in the preparation of tax returns for low-income individuals and senior citizens. As such, the VITA training was not related to Watson's official duties as a secretary and the requirement that Watson partake in this training on her own time cannot be construed as a denial of training. Even if it could be interpreted as a denial of training, Watson has not identified any harm she may have suffered as a result of being scheduled for VITA training on a weekend, without which, such a denial of training cannot constitute an adverse employment action. *See Hill v. Rayboy–Brauestein*, 467 F.Supp.2d 336, 352 (S.D.N.Y.2006) ("When an employee cannot show material harm from a denial of training, such as a failure to promote or a loss of career advancement opportunities, there is no adverse employment action."); *see also Little*

*v. NBC,* 210 F.Supp.2d 330, 384 (S.D.N.Y. 2002) (identifying a denial of training that may lead to promotional opportunities as a possible adverse employment action). Furthermore, Watson has not identified any similarly-situated IRS employee who was permitted to attend the VITA training during official hours.

Accordingly, Watson's claim based on her VITA training is dismissed for failure to state a prima facie case because she has not established an adverse employment action.

### 4. *February 20, 2001 Staff Meeting*

▮▮▮Watson claims that she suffered an adverse employment action because she was excluded from the February 20, 2001 Staff Meeting. The Government argues that the purpose of the meeting was to discuss new training classes with subject matter experts ("SMEs"), who instruct tax-related courses at the IRS, and employment development specialists ("EDSs"), who coordinate the administration of training classes. The conclusory statements in the Complaint regarding the purpose of the meeting and Watson's exclusion from the meeting do not provide sufficient evidence to create a material question of fact on this issue.

The Court finds that Watson's absence from the meeting did not impact the performance of her duties as a secretary, nor did it result in any other material change in the terms and conditions of her employment. *See Hepburn v. City of Torrington,* No. 3:02CV1252, 2004 WL 1771590, at *5 (D.Conn. Aug. 4, 2004) (holding that the exclusion of the plaintiff, who was not a captain or lieutenant, from a captains' meeting was not adverse employment action).

Accordingly, Watson's claim concerning her exclusion from the February 20, 2001 Staff Meeting is dismissed for failure to state a prima facie case because she has not established an adverse employment action.

### 5. *Upgrade to Grade/Level GS–6*

▮▮▮The Government moves for summary judgment on Watson's claim that the IRS failed to upgrade her to a grade/level GS–6 because the IRS had a legitimate, non-discriminatory reason for maintaining Watson at the GS–5 level. The Government argues that although Caterraccio began the process to upgrade Watson's prior position, the desk audit required to finalize the process had not commenced before the IRS reorganized and eliminated Watson's position, thereby precluding any desk audit.[2] Because the desk audit had not been completed, Watson remained in a grade/level GS–5 when she was placed in her new permanent position in the WIOD.

Once Defendant put forth a legitimate, non-discriminatory reason for its actions, the burden shifted to Watson to demonstrate that the reason proffered by Defendant was false, and that the real reason was discrimination. Defendant has brought forward ample evidence, unrefuted apart from conclusory allegations, that the desk audit was not conducted and Watson remained at a grade/level GS–5 because the IRS reorganization resulted in the elimination of Watson's secretarial position. The Court finds that finds that Watson has not produced sufficient evidence to create a genuine issue of material fact as to whether Defendant's reason for her continuation at a grade/level GS–5 was merely a pretext for discrimination. *See Middleton v. Metropolitan College of New York,* 545 F.Supp.2d 369, 377 (S.D.N.Y.

---

**2.** Watson has not claimed that she pursued the alternate avenue for upgrade to a GS–6 secretary by bidding on a competitively listed position.

2008) (granting summary judgment where plaintiff failed to produce sufficient evidence to create a genuine issue of material fact as to whether defendant's reason for termination was pretext for retaliation).

Accordingly, Defendant's motion for summary judgment as to Watson's claim regarding her classification as a grade/level GS–5 secretary is granted because Watson has failed to produce sufficient evidence to support a finding that the legitimate, non-retaliatory reason for Watson's classification was false and merely a pretext for unlawful discrimination.

### 6. *Retaliation and Hostile Work Environment*

Watson alleges that she was subjected to retaliation and/or a hostile work environment when she was reassigned to the WIOD. Watson alleges the following retaliation claims: (1) her EEO Individual Complaint form and her transit checks were stolen; (2) she was reassigned to the WIOD; (3) she received a fax showing she had resigned; (4) an unauthorized person accessed her personnel file; and (5) she was subjected to a hostile environment.

#### a. *Retaliation*

■ To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) participation in a protected activity and defendant's knowledge of the protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *See McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir.2001) (*citing Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir.2000)).

With regard to the EEO Complaint Form and the transit checks, the Court finds that Watson has produced no credible evidence that would support a finding

that these documents were stolen, that such conduct constituted an adverse employment action, and that there was a causal connection between her EEO Complaint and the missing documents. Therefore, Watson's claim regarding the missing EEO Complaint Form and transit checks fails, as she has not stated a prima facie case of retaliation.

■ Watson's claim concerning her reassignment to the WIOD also fails, as Defendant has put forth ample evidence demonstrating that the reassignment was conducted consistent with the applicable collective bargaining agreements following the reorganization of the IRS. Watson has not produced any credible evidence refuting this legitimate, non-discriminatory reason for the transfer sufficient to raise a material issue of fact on this claim. Therefore, Watson's claim regarding her reassignment to the WIOD fails, as she has not stated a prima facie case of retaliation.

■ With regard to the alleged fax showing that Watson had resigned from the IRS, Watson's claim fails because she has not stated a prima facie case of retaliation. Watson's personnel file did not reflect any such resignation, and clearly, as Watson is still employed by the IRS, no resignation was effected. Therefore, the Court finds that Watson has not demonstrated an adverse employment action with regard to this claim and summary judgment for the Government must be granted.

Finally, Watson's claim that an unauthorized person accessed her personnel file fails because she has not stated a prima facie case of retaliation. The Government confirms that the employee in question handled Watson's personnel file at the request of her new supervisor. However, Watson has produced insufficient evidence to demonstrate that this handling of her

personnel file was a materially adverse employment action, as she does not allege any harm she may have suffered as a result of the conduct in question. Therefore, Watson's claim based on the handling of her personnel file fails because she has not established an adverse employment action.

### b. *Hostile Work Environment*

 To defeat a motion for summary judgment on a claim of hostile work environment, "a plaintiff must produce evidence that the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult, that [wa]s sufficiently severe or pervasive to alter the conditions of the victim's employment." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir.2004) (*quoting Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000)). Isolated incidents ordinarily will not rise to the level of a hostile work environment. *Id.* Whether the conduct alleged was so "severe or pervasive" as to create "an objectively hostile or abusive work environment," is to be decided based on the totality of the circumstances, in light of such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

None of Watson's allegations, either in the Complaint or in the April 25, 2001 EEO Complaint, whether taken alone or considered together, are sufficient to establish a claim of hostile work environment. Watson alleges isolated incidents that do not rise to the requisite "severe or pervasive" level necessary for sustaining a claim of hostile work environment.

Accordingly, the Government's motion for summary judgment with regard to Watson's retaliation and hostile work environment claim is granted.

### III. *ORDER*

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 43) of defendant, Henry M. Paulson, Secretary of the United States Department of Treasury, for summary judgment is GRANTED.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**